**BIG RIVERS ELECTRIC CORPORATION,**
Plaintiff,

and

**NSA, Inc., Commonwealth Aluminum Corporation and Alcan Aluminum Corporation, Plaintiffs–Intervenors,**

v.

**William H. THORPE; Shirley Pritchett; Eddie R. Brown; Denise Thorpe Perkins; Clyde Brown; Buddie R. Morris, II, Executor of the Estate of Buddie R. Morris; and E & M Coal Company, Defendants.**

consolidated with

**In re GREEN RIVER COAL CO., INC., Debtor.**

**BIG RIVERS ELECTRIC CORPORATION,**
Plaintiff,

v.

**GREEN RIVER COAL CO., INC., Defendant.**

Civil Action No. 93–cv–0110–O(C).
No. 95–cv–107–O(C).

United States District Court,
W.D. Kentucky.

May 15, 1996.

Allen W. Holbrook, Ridley M. Sandidge, Jr., Frank Stainback, Jr., Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, W. David Denton, Denton & Keuler, Paducah, KY, for Big Rivers Electric Corporation.

Harold Wayne Newton, Hawesville, KY, Allison Wade, L. Dale Owens, Edward C. Konieczny, Booth, Wade & Campbell, Atlanta, GA, Steven W. Hardy, Steven A. Jackman, Wade & Campbell, LLP, Atlanta, GA, for NSA, Inc.

John E. Bickel, Jr., Thacker, Bickel, Hodskins & Thacker, Owensboro, KY, for Commonwealth Aluminum Corporation.

David C. Brown, Stites & Harbison, Louisville, KY, Victor B. Maddox, R. Greg Hovious, Tachau, Maddox & Hovious P.S.C., Louisville, KY, G. Christopher Van Bever, Andalex Resources, Inc., Louisville, KY, for Alcan Aluminum Corporation.

Peter L. Ostermiller, Frank E. Haddad, Jr., Louisville, KY, for William H. Thorpe.

Thomas M. Williams, Ogden, Newell & Welch, Louisville, KY, Barbara Reid Hartung, Greenebaum Doll & McDonald, Louisville, KY, Thomas E. Neal, John W. Stevenson, Connor, Neal & Stevenson, Owensboro, KY, David V. Miller, George C. Barnett, Greg A. Granger, Bowers, Harrison, Kent & Miller, Evansville, IN, for Eddie R. Brown and E & M Coal Co.

William F. Polk, Jr., Henderson, KY, Phillip Dane Shields, Henderson, KY, Sandra D. Freeburger, Deitz & Freeburger, Henderson, KY, for Shirley Pritchett.

John Tim McCall, Louisville, KY, for Denise Thorpe Perkins.

Bill R. Paxton, Jonathan King, Paxton & King, PLC, Central City, KY, Bart Adams, White, Conway & Adams, Louisville, KY, Jack Fowler, Mt. Carmel, IL, for Clyde Brown, Jr.

Jeff S. Taylor, Owensboro, KY, Roger V. Barth, Curtis, Mallet–Prevost, Colt & Mosle, Washington, DC, for Buddie R. Morris, Jr., and Buddie R. Morris, Sr.

John R. Leathers, Stephen G. Allen, Buchanan & Ingersoll, Lexington, KY, Thomas L. Vankirk, Buchanan Ingersoll, P.C., Pitts-

burgh, PA, for Green River Coal Company, Inc.

Merrill S. Schell, Barbara Wetzel Gernert, John P. Reisz, M. Stephen Pitt, Wyatt, Tarrant & Combs, Louisville, KY, Bobbie T. Shell, Baker & Botts, L.L.P., Dallas, TX, for Texas Commerce Bank National Association, Banque Paribas, Den Norske Bank A.S., Norwest Bank Denver, N.A., Bank Paribas and National Associates.

Phillip G. Abshier, Bamberger & Abshier, Owensboro, KY, Steven S. Crone, Foreman, Watson, Crone & Shelburne, P.S.C., Owensboro, KY, for Unsecured Creditors' Committee.

### MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the Court upon the motion to intervene as a defendant by the unsecured creditors' committee ("the committee") [Record No. 215].

The committee argues that 11 U.S.C. § 1109(b) [1] "confers an unconditional right to intervene" within the meaning of Federal Rule of Civil Procedure 24(a)(1) [2] and that it may intervene in Adversary Proceeding No. 94–4019 as a matter of right. Plaintiff Big Rivers Electric Corporation ("Big Rivers") disagrees. The issue before the Court is whether the unsecured creditors' committee may intervene in the adversary proceeding as a matter of right under 11 U.S.C. § 1109(b).

Both parties acknowledge that a split in authority exists on this issue. The Third Circuit has held that § 1109(b) gives a creditors' committee a right to intervene in adversary proceedings, *see Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982), *cert. denied*, 459 U.S. 1206 & 1207, 103

S.Ct. 1196, 75 L.Ed.2d 440 (1983), while the Fifth Circuit has held that § 1109(b) does not provide such a right, *see Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir.1985). The Sixth Circuit has not addressed this issue.

In *Marin*, the Third Circuit addressed this issue by first analyzing the language of the Bankruptcy Code. Section 1109(b) provides an absolute right of intervention to a creditors' committee in a Chapter 11 "case." The court viewed the "crucial issue" as "whether we should read 'case' to exclude adversary proceedings." *Marin*, 689 F.2d at 450. The court noted that the Bankruptcy Code did not define "case" or "adversary proceeding" and, thus, did not indicate whether "case" encompasses "adversary proceeding." *Id.* The *Marin* court found that narrowly reading § 1109(b), so that "case" does not encompass "adversary proceeding," would restrict the rights of parties to appear and be heard because "[m]ost litigated matters in a bankruptcy case are adversary proceedings." *Id.* The court stated that commentators appear to be opposed universally to a narrow construction of "case" and view "case" broadly as compared to other proceedings, which are steps within a case. *Id.* at 450–51 (citing 2 Collier on Bankruptcy ¶ 301.03 (15th ed. 1982)). The court found that the language of § 1109(b) favors this position because it "grants a right to appear and be heard not in 'a case' but 'on any issue in a case.'" *Id.* at 451. The court further stated the following:

> It is unlikely that Congress would have used such sweeping language if it had not meant "case" to be a broadly inclusive term. Congress' failure specifically to mention adversary proceedings in section 1109(b) is hardly surprising, given that Congress did not specifically mention ad-

---

1. Section 1109(b) provides, "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

2. Rule 24(a) provides as follows:
   Upon timely application anyone shall be permitted to intervene in an action: (1) when a

statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

versary proceedings anywhere in the Bankruptcy Code.

*Id.*

The *Marin* court next analyzed the legislative history of § 1109(b):

[L]egislative history ... states that section 1109(b)

[p]rovides in *unqualified terms,* that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an attorney, or by a committee. It is derived from section 206 of chapter X (11 U.S.C. 606). S.Rep. No. 95–989, 95th Cong., 2nd Sess. 116 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5902 (emphasis added).

*Id.* (footnote omitted). Congress derived § 1109(b) from Chapter X, Rule 10–210(a) of the former bankruptcy code, which Congress based on § 206 of the former code. *See Gulf Oil Corp.,* 762 F.2d at 1285. The *Marin* court found that this derivation suggests that Congress did not intend to upset the long line of § 206 cases that granted "a broad, absolute right to appear and be heard." *Marin,* 689 F.2d at 451. The court again cited Collier:

13A Collier Bankruptcy ¶ 10–210.02 (14th ed. 1977), remarks, on the relation between Rule 10–210(a)(1) and section 206, that "[t]he slightly altered language does not affect [sic] any change in the statute." Congress' obvious borrowing in section 1109(b) from the language of Rule 10–210(a) is further evidence that Congress intended for there to be no sharp break between section 206 and section 1109(b).

*Id.* (sic in original). The Court found that the legislative history of § 206 demonstrates that the intention behind § 206 was to broaden the rights of creditors to participate in proceedings under Chapter X. *Id.* at 452. The court also noted that Chapter X contained a permissive intervention provision, § 207. *Id.* The court found that the fact that § 1109(b) derived from § 206 and not § 207 reveals that Congress "understood that it was adopting the mandatory and not the permissive provision." *Id.*

The party opposing intervention in *Marin* argued that interpreting § 1109(b) as providing an absolute right would result in confusion, disorder, and expense. *Id.* at 453. The court rejected this policy argument. The court also cited earlier cases that likewise had viewed § 1109(b) broadly. *Id.* at 453–54. Finally, the court acknowledged that a statement contrary to its holding was in 5 Collier Bankruptcy Practice Guide ¶ 83.08[6] (1st ed. 1981). *Id.* at 456. However, the court deemed this a less authoritative source than Collier on Bankruptcy, which the court said takes an absolutist view. *Id.* at 456–57 (referring to 5 Collier on Bankruptcy ¶ 1109.02 (15th ed. 1982)). The court summarized its holding as follows: "[T]he broad and absolute construction of section 1109(b) comports with the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests." *Id.* at 457.

In *Gulf Oil,* the Fifth Circuit acknowledged that, if one views the Bankruptcy Code alone, the argument that § 1109(b) creates an absolute right to intervene in adversary proceedings appears strong. *Gulf Oil,* 762 F.2d at 1286. However, the court stated, "[t]his argument loses much of its force ... when § 1109(b) is juxtaposed with the procedural rules governing intervention, Rule 24, Fed.R.Civ.P., and Bankruptcy Rule (BR) 7024." *Id.* The court noted that courts have construed Federal Rule of Civil Procedure 24 narrowly and have hesitated to find unconditional statutory rights of intervention. *Id.* The court continued,

The statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federal regulatory commission; private parties are rarely given an unconditional statutory right to intervene.... Section 1109(b) is not the type of statute generally considered to provide an absolute right to intervene.

*Id.*

The court also stated that "an examination of the Code of Judiciary and Judicial Procedure (Title 28, United States Code) and of the Bankruptcy Rules reveals that Congress in many instances has drawn distinctions be-

tween bankruptcy 'cases' and the proceedings related to them." *Id.* The court found that the Advisory Committee Note to Bankruptcy Rule 7024 shows that intervention in a "case" and intervention in an "adversary proceeding" are two distinct concepts. The Advisory Committee Note to Bankruptcy Rule 7024 provides the following:

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately.

*Id.* at 1286–87. The court concluded "that Congress did not create an absolute statutory right to intervene in adversary proceedings through § 1109(b)." *Id.* at 1287.

In *Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228 (3d Cir.1994), the Third Circuit acknowledged the criticism of *Marin.* In *Phar–Mor,* the court summarized the criticism of *Marin* but refused to address the issue on its merits because the court's internal operating procedure barred it from overruling *Marin.* *Id.* at 1233. In its review of the criticism of *Marin,* the court discussed Collier on Bankruptcy:

*Collier on Bankruptcy* has taken the position that the *Marin* panel probably interpreted the legislative history of § 1109(b) incorrectly, and that the case law holding that § 1109(b) does not grant an automatic right to intervene under Rule 24(a)(1) "appears to be the better view." 9 *Collier on Bankruptcy* ¶ 7024.03 (15th ed. 1993).... According to *Collier,* Congress must have been aware of the specialized use of the term "case" when it created § 1109(b), and, by limiting § 1109(b) intervention to "cases," Congress meant to allow intervention as of right only in those proceedings involving the administration of the bankruptcy case and not any disputed matter within the bankruptcy case.

*Id.*

This Court finds the reasoning of *Gulf Oil* and of the Third Circuit's summary of the criticism of *Marin* to be persuasive. This Court adopts this reasoning as its own and holds that the committee cannot intervene in the adversary proceeding as a matter of right under § 1109(b). Nevertheless, the committee still may intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or may gain permissive intervention under Rule 24(b). The *Gulf Oil* court indicated that a court must make findings of fact and conclusions of law to determine whether a creditors' committee may intervene under Rule 24(a)(2) or Rule 24(b). *Gulf Oil,* 762 F.2d at 1287–88.

Accordingly, the Court ORDERS that

(1) the committee's motion to intervene under Rule 24(a)(1) via § 1109(b) is DENIED;

(2) a hearing for consideration of the committee's motion to intervene under Rule 24(a)(2) and/or Rule 24(b) is set in Owensboro for 10:00 a.m. (prevailing Owensboro time) on June 18, 1996; and

(3) the parties are DIRECTED to submit proposed findings of fact and conclusions of law regarding Rules 24(a)(2) and 24(b) no later than June 11, 1996.